UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARDEN CATERING - HAMILTON AVENUE, LLC, *et al.*,<br>    *Plaintiffs*,<br><br>    *v.*<br><br>WALLY'S CHICKEN COOP, LLC, *et al.*,<br>    *Defendants*. | Civil No. 3:11cv1892 (JBA)<br><br>June 18, 2014 |

**RULING ON DEFENDANTS' MOTION IN LIMINE**

Defendants Wally's Chicken Coop, LLC ("Wally's") and Michael Natale move [Doc. # 111] to preclude Plaintiffs Garden Catering-Hamilton Avenue, LLC ("Garden Catering") and Frank J. Carpenteri from presenting a claim for damages at trial on the basis that they failed to adequately disclose a computation of damages during discovery as required by Rule 26 of the Federal Rules of Civil Procedure. Defendants also move to preclude testimony regarding Defendant Natale's alleged wrongful solicitation of his brother Jeff Natale, Marcos Zuniga, and Philip Pittocco to work at Wally's. For the reasons that follow, Defendants' motion is denied.

**I.    Discussion**

    **A.    Damages Analysis**

Defendants contend that "Plaintiffs should not be allowed to present a claim for damages at trial because they neglected to provide to Defendants during discovery any analysis of, or legal support for, any claim for damages that relates to the matters that Plaintiffs might present at trial in this action." (Defs.' Mem. Supp. [Doc. # 111] at 1.) According to Defendants, Plaintiff's damages analysis was based upon a written report of

Joseph A. DeCusati, CPA (DeCusati Report, Ex. B to Defs.' Mem. Supp.), which only calculated "a claim for disgorgement of Defendants' 'profits.'" Because "[t]he legal bases for the disgorgement-of-profits claim were Plaintiffs' allegations of unfair competition under the Lanham Act," which is no longer a part of this case after the Court granted [Doc. # 86] Defendants' motion for summary judgment on this claim, "nothing in Plaintiffs' 'expert disclosure' is of any relevance in this action." (Defs.' Mem. Supp. at 2.)

    *1.*    *Background*

In their Damages Analysis of May 1, 2013 (Ex. A to Defs.' Mem. Supp.) to which the DeCusati Report was appended, Plaintiffs contended that Defendant Natale breached his fiduciary duty to Garden Catering and in doing so "caused harm and damage to Garden Catering" because it had to "expend time, money and resources to replace employees solicited by Natale and train new employees who took their place." (*Id.* ¶ 1.) The Analysis next contended that Plaintiffs were entitled to damages under the Lanham Act for Defendants' wrongful use of their trademarks (*id.* ¶ 2) and further contended that "the foregoing actions constitute unfair or deceptive acts" under the Connecticut Unfair Trade Practices Act (*id.* ¶ 3) and that "Defendants also benefited from the foregoing actions, and they unjustly failed to compensate Garden Catering HA for that benefit" (*id.* ¶ 4). The Damages Analysis stated that it was "based on" the DeCusati Report and that "[b]ased on that report and 15 U.S.C. § 1117, Plaintiffs will seek disgorgement of Defendants' profits." (*Id.* ¶ 5.)[1]

---

[1] The DeCusati Report was first disclosed to Defendants on March 6, 2013 as an expert witness disclosure under Rule 26(a)(2). (*See* Ex. B to Defs.' Mem. Supp.)

The DeCusati Report purported to provide an "opinion as to the damages . . . incurred by [Plaintiffs] . . . pursuant to the allegations set forth by the Plaintiffs in the complaint against [Defendants] pending in the United States District Court." (DeCusati Report at 1.) It noted that this action arose from "allegations of violations of the Lanham Act, through breach of fiduciary duty, unfair competition, unfair trade practices, and unjust enrichment." (*Id.* at 1 (footnote omitted).) The report summarized the trademarks held by Plaintiff Frank J. Carpenteri and noted that "[i]n addition to the Marks, Carpenteri also owns confidential business information, including recipes, proprietary food preparation processes, business plans, trade secrets, supplier arrangements, supplier lists, price lists, manuals, and customer lists." (*Id.* at 2.) In a section of the report titled "Basis of Recovery," Mr. DeCusati wrote that "Plaintiffs bring the current action pursuant to violations of the Lanham Act" under which they could seek Defendant's profits as damages. (*Id.* at 3.) The report calculated Wally's profits for 2011 and 2012. (*Id.* at 4.) A separate section of the report titled "Licensing Fees" noted that it "also considered three licensing agreements" between Carpenteri and franchisees allowing them to use Carpenteri's trademarks and confidential business information, although it is not clear how these fees factored into the analysis. (*Id.* at 4.)

    2.    Discussion

Fed. R. Civ. P. 26(a)(1)(A)(iii) provides that

> a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation

is based, including materials bearing on the nature and extent of injuries suffered.

Although Rule 26 does not does not elaborate on the level of specificity required in the initial damages disclosure, courts have noted that the use of the word "computation" "contemplates some analysis." *Maharaj v. California Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (internal quotation marks omitted); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents.").

Rule 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) . . ., the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).  However, "the court does have discretion to impose other, less drastic, sanctions," *Design Strategy, Inc.*, 469 F.3d at 298, and can afford a party the opportunity to cure defects in a damages analysis rather than imposing the "drastic" sanction of precluding such evidence, *see U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12cv6811 (CM) (JCF), 2013 WL 5495542, at *7 (S.D.N.Y. Oct. 3, 2013) ("U.S. Bank's failure to disclose its damages computation . . . has been cured. Thus, I will neither preclude U.S. Bank's damages evidence nor impose any other sanction."); *see also Nationwide Mut. Ins. Co. v. Mortensen*, No. 3:00-CV-1180 (CFD), 2010 WL 5071046, at *2 (D. Conn. Dec. 7, 2010) ("Because there is sufficient time before trial for Nationwide to review an updated damages analysis, the Court orders the defendants to provide Nationwide with its damages analysis within fourteen days of this Order.").

4

While preclusion may be appropriate where a party has provided no notice whatsoever of an entire "category" of damages sought, *see, e.g., Design Strategy, Inc.*, 469 F.3d at 295 (district court did not abuse its discretion in precluding expert testimony where the plaintiff did not "ever disclose 'lost profits' as even a 'category' of 'damages' sought on its Initial Disclosure Statement."), "Rule 26(a)[] anticipates supplemental disclosures with ever-greater level of detail as discovery progresses," *id.* (citing *City & County of San Francisco v. Tutor–Saliba Corp.,* 218 F.R.D. 219 (N.D. Cal. 2003)).

Plaintiffs contend that the DeCusati Report was not limited to its Lanham Act claims and recited various causes of actions. (Pls.' Opp'n [Doc. # 116] at 4.) Although the DeCusati Report did focus largely on the Lanham Act claims, in which a plaintiff can seek to recover a defendant's profits, *see* 15 U.S.C. § 1117(a), the calculations and analysis in the report are not necessarily limited to the Lanham Act and the Damages Analysis accompanying this report set forth that Plaintiffs were seeking damages on all counts. The DeCusati Report explicitly described Plaintiffs' other claims and calculated not only Defendants' profits but also Plaintiffs' revenue from licensing trademarks and confidential business information that Plaintiffs contend Defendants wrongfully took from them. (DeCusati Report at 4.)

Although not as clear as it should have been, this analysis serves its purpose of putting Defendants on notice of the method by which Plaintiffs' claimed damages were calculated. Defendants' profits can be a measure of damages not only for Plaintiffs' Lanham Act claims but also their breach of fiduciary duty claim. *See* Restatement (Second) of Agency § 403 ("If an agent receives anything as a result of his violation of a duty of loyalty to the principal, he is subject to a liability to deliver it, its value, or its

5

proceeds, to the principal."); *see also XL Specialty Ins. Co. v. Carvill Am., Inc.*, X04CV044000148S, 2007 WL 1748157, at *41 (Conn. Super. Ct. May 31, 2007) ("The principal is entitled to any loss resulting from or caused by the breach, and the agent may as well be required to forfeit any profit gained by the breach." (emphasis omitted)).

Likewise, the revenue that Mr. Carpenteri received for licensing the confidential business information described in the DeCusati Report could serve as a measure of damages for recovery under a theory of unjust enrichment.[2] As the Court noted in its Ruling on Defendants' Motion for Summary Judgment, "the basis for Plaintiff's unjust enrichment claim is that Defendants have wrongfully appropriated from them without compensation confidential business information—including recipes, food preparation methods, supplier arrangements, business plans, and trade secrets—for which they should have had licensees to obtain" and "this business information is valuable property" from which "they derive substantial revenue from licensing it to franchisees." (*Id.* at 36–37.) Therefore, the fee for which Plaintiffs sell this business information to third parties could serve as a measure of damages for Defendants' alleged misappropriation of this business property. *See N.E. Distribution, Inc. v. Premier Logistics Servs., Inc.*, 49 Conn. Supp. 65, 78 (Super. Ct. 2004) (determination of damages for wrongful appropriation of a business's good will can be determined using a "market approach," which "depends on deriving a

---

[2] However, the revenue figures in the DeCusati Report do not itemize what proportion of the revenue is derived from trademarks, which the Court has already concluded that Defendants have not infringed, and confidential business information, which the jury must determine if Defendants wrongfully appropriated. As discussed *infra*, Defendants have been afforded the opportunity to seek additional discovery to clarify the basis for Plaintiffs' claimed damages.

figure for the payment of royalties for the use . . . by a subsequent theoretical purchaser"). These damages could also be awarded for Plaintiffs' common law unfair competition and CUTPA claims. *See Capitol City Pers. Servs., Inc. v. Franklin*, 52 Conn. App. 783, 787 (1999) (lost profits from business opportunity that plaintiff's former employee wrongfully appropriated is appropriate measure of damages for a CUTPA claim).

Defendants do not cite any authority showing that disgorgement of profits or restitution for a lost business opportunity are not available as damages on Plaintiffs' remaining claims but rather dispute that there was any breach of fiduciary duty or unfair competition. (*See* Defs.' Mem. Supp. at 5–8.) These arguments go the merits of Plaintiffs' claims and are questions that must be determined by the jury in the upcoming trial. *See TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) ("The purpose of *in limine* motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence" and not to "serve as a form of advance trial of substantive portions of the case, or indeed as a substitute for the trial itself.").

However, as Defendants note, Plaintiffs' damages analysis does not provide any "computation" or even total amount of damages that Plaintiffs claim for the "time, money and resources to replace employees solicited by Natale and train new employees who took their place." (Damages Analysis ¶ 1.) At the pretrial conference, Plaintiffs' counsel contended that they had calculated a total dollar amount for these damages but had not disclosed this figure because they didn't believe they were asked to do so during discovery. (*See* April 24, 2014 Hr'g Tr. [Doc. # 117] at 27.) However, this is precisely the information that Rule 26(a) requires to be disclosed "without awaiting a discovery request." Nevertheless, at the pretrial conference, the Court provided Plaintiffs with the

7

opportunity to supplement their disclosures to Defendants to attempt to cure inadequacies in their Damages Analysis and suggested that Defendants could "take what further discovery" was needed "to discover the basis for those numbers." (*Id.*) Furthermore, if the Damages Analysis left Defendants uncertain about the basis for Plaintiffs' claimed damages, it is significant that Defendants waited a year to bring this issue to the Court's attention rather than earlier attempting to seek clarification of the claimed damages through supplemental discovery. *See Design Strategy, Inc.*, 469 F.3d at 295 (recognizing that an initial damages analysis can be supplemented as discovery processes).

According to Defendants, the only additional information that Plaintiffs have provided since the pretrial conference is a total dollar figure of $2,400 in damages caused by Defendant Natale's solicitation of employees and an email from Plaintiffs' counsel describing the expenses associated with this figure without any supporting documentation. (Defs.' Reply [Doc. # 127] at 2; April 28, 2014 email Gerard N. Saggese III to James Doyle, *et al.*, Ex. C to Def.'s Reply; *see also* Damages Analysis ¶ 1.) In a subsequent Ruling [Doc. # 120] on a discovery dispute related to this disclosure, Magistrate Judge Margolis explained that "it appears that the only damages sought that differ from DeCusati's expert report is the" $2,400 in "costs for replacing and training new staff" and that the parties disputed "the quantification" and "documentation" that had been provided in support of these claimed damages. (*Id.* at 2.) Magistrate Judge Margolis permitted Defendants to take a deposition of Plaintiffs' corporate representative to explore "the arithmetic derivation of that sum." (*Id.*) Before this Ruling, defense counsel confirmed that "[t]he discovery that Defendants now seek is exactly co-extensive

with the scope of the preclusion Defendants seek in their Motion in Limine." (May 9, 2014 Ltr. Anthony J. Medico to Hon. Joan G. Margolis [Doc. # 122] at 2.)  Accordingly, to the extent that Plaintiffs' damages analysis was deficient, Defendants have been afforded the opportunity to conduct additional discovery and their motion in limine is moot as to those claims.

While Defendants' motion to preclude Plaintiffs from presenting any claim for damages or the testimony of Mr. DeCusati has been denied, Defendants are not precluded from challenging the foundation for Plaintiffs' modified damages claim.

### B.  Testimony Regarding Defendant Natale's Solicitation of Garden Catering Employees

Defendants further request that Plaintiffs be precluded from presenting evidence at trial regarding Defendant Michael Natale's solicitation of his brother Jeff Natale, Marcos Zuniga, and Philip Pittocco.  Defendants characterize each of these allegations as "absurd" for various reasons and argue that because "Natale was a part-time, paid-in-cash 'employee' . . . . Plaintiffs have not alleged that Natale was a trusted employee in a confidential relationship . . . that would suggest any fiduciary duty." (Defs.' Mem. Supp. at 3–7.)  However, as the Court has already noted in its Ruling on Defendants' Motion for Summary Judgment, the question of whether Natale owed Garden Catering a fiduciary duty and breached that duty is for the jury to decide.  (*See id.* at 29.)  Defendants' substantive disagreement with the merits of Plaintiffs' claims is not a proper basis to exclude such evidence by way of a motion in limine.  *See TVT Records.*, 250 F. Supp. 2d at 344.

## II. Conclusion

For the reasons discussed above, Defendants' Motion [Doc. # 111] in Limine is DENIED.

IT IS SO ORDERED.

_____/s_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of June, 2014.